UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| LINDA CLOUGH and | : | |
| GARNET DRAKIOTES | : | |
| Plaintiffs, | : | |
| | : | Case No. 3:17-cv-00140-JBA |
| v. | : | |
| | : | |
| ALLSTATE INSURANCE COMPANY and | : | |
| LIBERTY INSURANCE CORPORATION | : | APRIL 26, 2017 |
| | : | |
| Defendants. | : | |
| | : | |

**DEFENDANT ALLSTATE INSURANCE COMPANY'S
MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS
COUNTS I AND II OF THE AMENDED COMPLAINT**

**I.      INTRODUCTION AND SUMMARY OF ARGUMENT**

Pursuant to Fed. R. Civ. P. 12(b)(6), Defendant Allstate Insurance Company ("Allstate") respectfully requests the Court to dismiss Counts I and II of Plaintiffs' First Amended Complaint ("Complaint") (ECF No. 29).[1] This is one of the cases pending in this Court involving property insurance claims arising from concrete home foundations, or in this case "frost walls,"[2] that have progressively deteriorated over time due to defective materials that have been part of the concrete since it was initially installed. This case is similar to *Alexander v. General Ins. Co. of America*, No. 3:16-cv-0059 (D. Conn.),[3] in which Judge Underhill recently granted a motion to dismiss a complaint seeking coverage for a similar loss involving an allegedly defective concrete

---

[1] Counts III and IV are not directed against Allstate.
[2] ECF No. 29, Compl., ¶ 10. "Frost walls" in this case mean foundation walls with footings at or below the frost line, backfilled inside and out and with no basement.
[3] A copy of the transcript of Judge Underhill's oral ruling in *Alexander* is attached to this memorandum as Exhibit A.  A copy of the order granting the motion to dismiss is attached as Exhibit B.  Judge Underhill subsequently denied the Plaintiffs' Motion for Reconsideration.  *See Alexander v. Gen. Ins. Co. of Am.*, No. 3:16-cv-59 (SRU), 2017 WL 188134 (D. Conn. Jan. 17, 2017). Except as otherwise indicated, copies of other unreported cases cited herein are attached as Exhibit G.

foundation, under policy language similar to Allstate's policy.[4] This case also involves insurance policy language identical to that in *Metsack v. Liberty Mutual Fire Insurance Co.*, 3:14-cv-01150 (VLB), 2017 WL 706599 (D. Conn. Feb. 21, 2017),[5] in which the District Court granted Allstate's motion for summary judgment on breach of contract, bad faith and CUTPA/CUIPA claims in a concrete deterioration case with virtually the same allegations as this case. Indeed, the decision in *Metsack* is so apposite that Plaintiffs have amended their Complaint in an apparent attempt to plead around it. However, the two new allegations added by Plaintiffs in Count I, paragraphs 16 and 17, claim only that certain events "may" have occurred, and do not allege that a "sudden" collapse *has* occurred.  As *Metsack* makes clear, under the Allstate policy a "collapse" must be a discrete, sudden event, not progressive deterioration, as alleged here.

Allstate seeks to dismiss Count I of the Complaint, which purports to allege a breach of contract, on the grounds that the alleged damage is not covered under the plain language of the Allstate Policy.  Plaintiffs' claim is for "pattern cracking" in the frost walls of their property caused by rusting and expansion of aggregate that has existed in the concrete from the time their home was built in 1998. (ECF No. 29, Compl., ¶¶ 5, 8, 10-11, 13-14). The Allstate Policy excludes losses consisting of or caused by (1) "cracking . . . of walls;" (2) faulty materials used in construction; and (3) rust or corrosion.  These are the very conditions that Plaintiffs claim exist in this case. (Exh. C, pp. 36-37; ECF No. 29, Compl, ¶¶ 8, 10-11). The Allstate Policy also

---

[4]A copy of the Allstate Policy in force at the time of the claimed loss (the "Allstate Policy") is attached to this Motion to Dismiss as Exhibit C. "In adjudicating a motion to dismiss, a court may consider only the complaint, any written instrument attached to the complaint as an exhibit, any statements or documents incorporated in it by reference, and any document upon which the complaint heavily relies."  *Geron v. Seyfarth Shaw LLP (In re Thelen LLP)*, 736 F.3d 213, 219 (2d Cir. 2013). Plaintiff makes repeated references to the provisions of the Allstate Policy in connection with her claims against Allstate, and therefore the Court is may consider it for purposes of this Motion to Dismiss.  (ECF No. 29, Compl. ¶¶ 9-10, 22-25, 27-28).

Plaintiff also alleges that she made her claim under "the terms of all of the homeowner's *policies*" issued by Allstate (ECF No. 29, ¶ 22) (emphasis added).  Because the relevant terms of the Allstate policies have not changed during the period Plaintiff has been covered with Allstate, for purposes of this motion, the references to Exhibit C are applicable to all Allstate homeowners policies issued to Plaintiff.

[5] A copy of the decision and order granting the motion for summary judgment in *Metsack v. Liberty Mutual Fire Insurance Co.* is attached as Exhibit D.

expressly provides that to be covered under the Policy's limited coverage for collapse, there must be (1) an "entire collapse" of the structure or a portion thereof; (2) the collapse must be "sudden and accidental" and (3) a collapse cannot be "settling, cracking, shrinking, bulging, or expansion." (Exh. C, p. 44). The Connecticut Supreme Court has recognized that the term "sudden," in the context of an insurance policy's exception to an exclusion for the "sudden and accidental" release of pollutants, means "temporally abrupt." *Buell Indus. Inc. v. Greater New York Mut. Ins. Co.*, 259 Conn. 527, 536, 791 A. 2d 489 (2002). Judge Underhill, in *Alexander v. General Ins. Co. of America*, equated an "abrupt" collapse with sudden and catastrophic failure, as did the Connecticut Superior Court, in granting summary judgment to the insurer, in the concrete deterioration case of *Jemiola v. Hartford Casualty Ins. Co.*, CV-15-6008837-S (J. D. Tolland 3/2/2017) at 22 ("'sudden' has recently been found to mean 'a rapid or otherwise abrupt manner.'").[6]

Judge Bryant, in *Metsack*, held that as a matter of law the plaintiffs' claimed loss, which, as here, consisted of progressive deterioration of foundation walls over time, did not occur "suddenly," and thus was not a covered collapse under the same Allstate policy at issue in this case. *Id.* at 18. In an evident attempt to plead around the decision in *Metsack*,[7] Plaintiffs have alleged that unspecified sudden events "may" occur during the admittedly long-term process of deterioration. (ECF No. 29, Compl., ¶¶ 16-17). However, Plaintiffs have not alleged any facts to support a claim that any "sudden" event has actually occurred with respect to their property. Moreover, the Allstate Policy also states that "[c]ollapse does not include . . . cracking . . . bulging or expansion," the very conditions Plaintiffs claim as their loss (*Id.*; Compl, ¶¶ 8, 10-11, 17). Accordingly, there is no coverage for Plaintiffs' claimed loss under the terms of the Policy.

---

[6] A copy of the decision in *Jemiola v. Hartford Casualty Ins. Co.* is attached hereto as Exhibit E.
[7] Plaintiff's counsel here was also plaintiffs' counsel in *Metsack, Alexander,* and *Jemiola*.

If the Court grants Allstate's Motion to Dismiss Count I, it must also dismiss Count II, which purports to allege that Allstate engaged in unfair and deceptive practices in violation of the Connecticut Unfair Insurance Practices Act ("CUIPA") and the Connecticut Unfair Trade Practices Act ("CUTPA"). Allstate cannot be held liable under CUTPA for a violation of CUIPA when it has not breached its insurance contract. Moreover, even if one were to assume, for purposes of argument, that coverage exists (which it does not), as a matter of law, Allstate's denial of coverage was not in bad faith, and its liability under the policy was not "reasonably clear"—at a minimum, there is a good faith dispute over whether coverage applies in this case. Plaintiffs' CUTPA/CUIPA claim in Count II fails for that reason as well.

## II.    RELEVANT BACKGROUND AND ALLEGATIONS

Plaintiffs are the owners of property located at 70 Fitch Meadow Lane, South Windsor, Connecticut (the "Property"). (ECF No. 29, Compl., ¶ 1). Plaintiffs claim that the Property was constructed in 1998. (*Id.*, ¶ 5). Plaintiffs claim that between 1998 and 2015, they insured the Property under Allstate homeowner's insurance policies. (*Id.*, ¶ 6). Plaintiffs claim that in July of 2016, they "noticed that the frost walls of [the Property] had a series of horizontal and vertical cracks." (*Id.*, ¶ 8). Plaintiffs say that they investigated these cracks and learned that the cracking was caused by a "chemical compound" found in basement walls constructed in the late 1980s and early 1990s with concrete "most likely" from the J.J. Mottes Concrete Company. (*Id.*, ¶¶ 9-10). Plaintiffs claim that this compound is contained in the aggregate used in making the concrete, and that the aggregate "began to oxidize (rust) and expand . . . ." (*Id.*, ¶ 11).  Plaintiffs claim that "at some point" between the time they were poured and July 2016, the frost walls of the Property "suffered a substantial impairment to their structural integrity." (*Id.*, ¶ 13). Plaintiffs claim that "[i]t is only a question of time" until the frost walls fall in. (*Id.*, ¶ 14).

4

Plaintiffs claim that on or about August 8, 2016, they notified Allstate of their claim. (*Id.*, ¶ 18).[8] Allstate denied the Plaintiffs' claim for coverage by letter dated November 16, 2016. (*Id.*, ¶ 20). Plaintiffs sued Allstate, along with their current insurer, Liberty Insurance Corporation ("Liberty"),[9] in Connecticut state court on January 9, 2017. (ECF No. 1). Liberty timely removed the case to Federal Court on January 30, 2017. (*Id.*).

On April 5, 2017, Plaintiffs filed an Amended Complaint ("Complaint"). (ECF No. 29). In Count I of the Complaint, Plaintiffs claim that Allstate's denial of their claim constituted a breach of the insurance contract. (*Id.*, ¶ 23). Specifically, Plaintiffs claim that Allstate "agreed to provide coverage for the collapse of a building or any part of a building caused by hidden decay or the use of defective materials or methods in construction." (*Id.*, ¶ 21). Plaintiffs claim that that the "grounds offered by Allstate for the denial of coverage are contrary to the express provisions" of the Allstate Policy. (*Id.*, ¶ 22). Count I of the Complaint describes the deterioration of Plaintiffs' foundation walls as a "process of decay" that "occurs over the course of years, ultimately resulting in substantial impairment and complete degradation. . . ." (*Id.*, ¶16). However, in a new allegation evidently designed to plead around the *Metsack* decision, the Complaint states that this "process of decay" "*may* cause sudden events throughout the course of decay." (*Id.*) (emphasis added).In another allegation not present in the original complaint, the Complaint states that during the progress of degradation, "external forces *may* cause a series of sudden events where the frost walls bulge and shift in some increment or pieces of concrete become dislodged and fall to the floor."(*Id.*, ¶ 17) (emphasis added).

---

[8] Plaintiffs claim that this notice constituted a timely claim for coverage under "*all* of the homeowner's policies issued to them by Allstate." (ECF No. 29, ¶ 19 (emphasis added)).

[9] Plaintiffs allege that Liberty insured the Property under a homeowner's policy from 2015 to the present. (ECF No. 29, Compl., ¶ 42).

Count II of the Complaint, which purports to allege a violation of CUTPA and CUIPA, incorporates Count I, and adds the conclusory allegation that through the Insurance Services Office, Inc. ("ISO"), Allstate "has knowledge" that other insurers in Connecticut have denied so-called "concrete decay claims" on a variety of grounds, and that Allstate's denial of coverage in their case makes it part of "an industry wide practice of denying coverage for concrete decay claims . . . ."  (*Id.*, ¶¶ 27, 31-34). Plaintiffs allege that Allstate, by "failing to effectuate prompt, fair and equitable settlements of claims in which liability has become reasonably clear as part of its general business practice," has violated CUIPA, specifically Conn. Gen. Stat. § 38a-816(6)(f) (*Id.*, ¶ 38).

## III.   LEGAL STANDARD

A motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) should be granted when the complaint fails to contain "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (*quoting Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *accord Gross v. Rell*, 695 F.3d 211, 215 (2d Cir. 2012). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. Where a court is unable to infer more than the "mere possibility" of misconduct based on the pleaded facts, the pleader has not demonstrated that it is entitled to relief and the complaint is subject to dismissal.  *Id*. at 679; *Heimeshoff v. Hartford Life & Accident Ins. Co.*, No. 3:10 cv 1813 (JBA), 2012 WL 171325 (D. Conn. Jan. 16, 2012).  Similarly, "[w]here a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." (internal quotation marks omitted.) *Kim v. State Farm Fire & Cas. Co.*, No. 3:15-cv-879 (VLB), 2015 WL 6675532 at *2 (D. Conn. Oct. 30, 2015).

6

The plausibility standard set forth in *Iqbal* and *Twombly* requires plaintiffs to offer more than "labels and conclusions," or "a formulaic recitation of the elements of a cause of action," or "naked assertion[s]," devoid of "further factual enhancement." *Iqbal*, 556 U.S. at 678 (*quoting Twombly*, 550 U.S. at 557). A court considering a motion to dismiss "begins its analysis by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumptions of truth . . . . Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice . . . . Next, the court must determine whether the well-pleaded factual allegations, assumed to be true, plausibly give rise to an entitlement of relief." *Hawkeye, LLC v. Zurich Am. Ins. Co.*, 2011 WL 1216408 (D. Conn. Mar. 28, 2011) (*citing Hayden v. Paterson*, 594 F.3d 150, 161 (2d Cir. 2010)) (citations and quotation marks omitted).

## IV.    LAW & ARGUMENT

### A.    Count I Should be Dismissed Because the Claimed Loss Consists of Cracking Damage to the Walls Caused by Deteriorating Concrete, Which is Not Within the Policy's Coverage Grant.

The Allstate Policy affords no coverage for Plaintiffs' claimed loss because progressive deterioration, caused by the cracking of basement walls due to defective materials, is not covered under the plain and unambiguous terms of the Policy. First, the Allstate Policy only covers "sudden and accidental direct physical loss" to covered property. (Exh. C, p. 44). Plaintiffs admit their loss consists of progressive deterioration that has continued from the time the frost walls of the Property were poured until the present. (ECF No. 29, Compl., ¶¶ 10-12). Second, losses consisting of or caused by cracking of walls, defective construction materials, and rust, all of which Plaintiffs allege, are specifically excluded under the Allstate Policy. (Exh. C, pp. 36-37). Third, losses consisting of or caused by "collapse" are also excluded, except as provided under the limited additional coverage for the "entire collapse" of all or part of a building structure that

is "sudden and accidental" and caused by one of six specified perils. (*Id.*, pp. 36, 44). As noted, however, the Complaint alleges a progressive loss, arising from defective materials in the original concrete, to the Property's frost walls, resulting from oxidation and rusting in the concrete—not a sudden and abrupt event. (ECF No. 29, Compl., ¶¶ 10-13).

The Complaint admits that "the process of decay occurs over the course of years" but also alleges that this process "*may* cause sudden events throughout the course of decay" and that "external forces *may* cause a series of sudden events where the frost walls bulge and shift in some increment or pieces of concrete become dislodged and fall to the floor." (ECF No. 29, Compl., ¶¶ 16-17) (emphasis added). Plaintiffs do not explain what these "external forces" are, nor do they allege *any* facts showing that a "sudden" event has occurred during an Allstate policy period. Rather, Plaintiffs merely allege, without any elaboration, a theoretical possibility that some unspecified "sudden" event "may" occur at some unspecified point in time.[10] These vague, conclusory allegations are insufficient to establish that a "sudden and accidental direct physical loss" occurred during an Allstate policy period. (Exh. C, p. 44) (emphasis added); *Iqbal*, 556 U.S. at 678; *Keating v. Carey*, 706 F.2d 377, 392 n.2 (2d Cir. 1983). Accordingly, Plaintiffs have failed to allege that their claimed loss falls within Allstate's grant of coverage for "sudden and accidental direct physical loss," and Count I should be dismissed.

### 1. Loss Consisting of or Caused By Cracking Of Walls Is Excluded Under The Policy.

Under *Losses We Do Not Cover Under Coverages A and B*, the Allstate Policy provides, in relevant part:

> [W]e do not cover loss consisting of or caused by any of the following:

---

[10] Interestingly, the allegations of unspecified "sudden events" that *may* occur are not present in the breach of contract claim against Liberty, although the allegations against Liberty are otherwise identical (*See, e.g.* ECF No. 29, Compl., ¶¶ 44-58).

*15.*

* * *

g) *settling, cracking, shrinking, bulging or expansion of pavements, patios, foundations, walls, floors, roofs or ceilings;*

* * *

(Exh. C, p. 36).

The Allstate Policy does not cover "cracking" of "foundations [or] walls." (*Id*.). Plaintiffs' claimed loss consists of "horizontal and vertical cracks" and "pattern cracking" in the frost walls of the Property. (ECF No. 29, Compl., ¶¶ 8-10). Such a claim falls squarely within the exclusion for "cracking . . . of foundations [and] walls . . . ." *See Rapid Park Indus. v. Great Northern Ins. Co.*, Docket No. 09-Civ-8292, 2010 WL 4456856 at *4-5 (S.D.N.Y. Oct. 1, 2010) (deterioration and sagging of concrete floor of parking garage fell within exclusion for "settling [and] cracking . . . of paved or concrete surfaces . . . ."); *Boston Co. Real Estate Counsel v. Home Ins. Co.*, 887 F. Supp. 369, 373 (D. Mass. 1995) (interpreting exclusion identical to that in the Allstate Policy to preclude coverage for building settlement caused by improper site preparation); *Rhoden v. State Farm Fire & Cas. Co.*, 32 F. Supp. 2d 907, 913 (S.D. Miss. 1998) (cracking of concrete foundation excluded, applying identical exclusion as in this case); *Nida v. State Farm Fire & Casualty Co.*, 454 So. 2d 328, 335 (La. App. 3d Cir. 1984) (foundation damage caused by expansion and contraction of soil excluded from coverage under settlement exclusion).

## 2.      Losses Caused By Defective Materials Used In Construction, or Rust and Corrosion, Are Not Covered Under The Policy.

Plaintiffs also claim that their loss is caused by defective materials in the aggregate present in the concrete when it was poured. (ECF No. 29, Compl., ¶ 10-11). In *Losses We Do Not Cover Under Coverages A and B*, the Allstate Policy provides, in relevant part:

9

*In addition, we do not cover loss consisting of or caused by any of the following:*

* * *

22. *Planning, Construction or Maintenance, meaning faulty, inadequate or defective:*

* * *

c) *materials used in repair, construction, renovation or remodeling . . .*

* * *

*of property whether on or off the residence premises by any person or organization.*

(Exh. C, pp. 36-37).

There is nothing unclear or ambiguous about this exclusion. The Allstate Policy does not cover loss caused by "faulty, inadequate or defective . . . materials used in . . . construction." (*Id.*). Plaintiffs' claimed loss is allegedly the result of "defective materials" used in the construction of the frost walls of the Property that caused the chemical reaction to occur. (ECF No. 29, Compl., ¶¶ 10-11). Thus, their claimed loss is excluded. *See Edmond v. Hartford Ins. Co.*, Docket No. 3:98 CV 1653, 2008 WL 616092 at *5 (D. Conn. Mar. 3, 2008) (evidence showed that damage to home caused by faulty original construction, and therefore not covered under exclusion substantively identical to one at issue here); *Megna v. United Servs. Auto. Ass'n*, Docket No. CV00439422, 2004 WL 944775 at *2 (Conn. Super. Ct. Apr. 13, 2004) (DeMayo, J.) (damage caused by malfunctioning boiler fell within scope of faulty design, specifications and workmanship exclusion); *Bell Power Sys. v. Hartford Fire Ins. Co.*, Docket No. CV 92 0065538, 1995 WL 81430 at *5 (Conn. Super. Ct. Feb. 15, 1995) (Aurigemma, J.) (contractor's failure to seal inlet and outlet holes in oil tank that later leaked constituted a "deficiency in design, specifications or workmanship" within policy exclusion).

The Allstate Policy similarly does not cover loss "consisting of or caused by . . . rust or other corrosion." (Exh. C, p. 36). Plaintiffs characterize their claimed loss as a process in which the concrete aggregate "began to oxidize (rust) and expand, breaking the bonds of the concrete internally and reducing it to rubble." (ECF No. 29, Compl., ¶ 11). Therefore, the Policy's exclusion for loss caused by "rust or other corrosion" also precludes Plaintiffs' claim.

### 3.      The Additional Coverage for "Collapse" Does not Apply.

To avoid the clear exclusions for loss caused by "settling, cracking, shrinking, bulging or expansion of . . . walls," "faulty, negligent, inadequate or defective . . . materials . . . used in . . . construction," and "rust or other corrosion," Plaintiffs assert that their claim arising out of cracked concrete is covered as a "collapse" caused by "hidden decay" or "defective materials." (Exh. C, pp. 36-37, 44; ECF No. 29, Compl., ¶¶ 21-22). As demonstrated below, however, no covered "collapse" occurred during Allstate's policy period, because the alleged damage does not constitute a "collapse" within the Policy's grant of coverage.[11]

The Allstate Policy generally excludes coverage for collapse, except as provided under Section I—Additional Protection—Collapse. (Exh. C, pp. 36, 44). Section 1, Paragraph 11 provides that:

*We will cover:*

> a) *the **_entire_** collapse of a covered building structure;*
>
> b) *the **_entire_** collapse of part of a covered building structure; and*
>
> c) *direct physical loss to covered property caused by (a) or (b) above.*

---

[11]The Allstate Policy applies "only to losses or occurrences that take place during the policy period." (Exh. C, p. 33).

> *For coverage to apply, the collapse of a building structure specified in (a) or (b) above **<u>must be a sudden and accidental direct physical loss</u>** caused by one or more of the following:*
>
> \* \* \*
>
> *b) hidden decay of the building structure;*
>
> \* \* \*
>
> *f) defective methods or materials used in construction, repair, remodeling or renovation.*
>
> **<u>Collapse does not include settling, cracking, shrinking, bulging or expansion</u>.**

(Exh. C, p. 44) (emphasis added).

The Policy's limited collapse coverage is an exception to the Policy's general exclusion for collapse. The Policy provides that to be covered, there must be an "entire collapse" of the structure or a portion thereof, and that the collapse must be "sudden and accidental." (*Id.*). In *Buell Indus. Inc. v. Greater New York Mut. Ins. Co.*, 259 Conn. 527, 540, 791 A.2d 489 (2002), the Connecticut Supreme Court held that the term "sudden," in the context of an insurance policy, means "temporally abrupt," and that "a process that occurs slowly and incrementally over a relatively long time, no matter how unexpected or unintended the process" is not "sudden." *Id.*, at 544.[12] By Plaintiffs' admission, however, the frost walls of the Property have

---

[12]In *Buell*, the Court was asked to interpret the meaning and applicability of the "sudden and accidental" exception to the pollution exclusion in the defendant insurers policies. *Id.* at 529. The plaintiff insureds had sought coverage from the defendants for contamination discovered at its properties in 1990 caused by releases of pollutants that had occurred during and after 1966. *Id.* at 530. The plaintiffs, on appeal, challenged the lower court's holding that "there exists no genuine issue of material fact that any of the discharges were, as required by the insurance policies, 'sudden.'" *Id.* at 535. The plaintiff insureds argued that the term "sudden" meant "unexpected," not necessarily quick and abrupt, and that if the pollutant releases over the years were unexpected and accidental, the policies should provide coverage. *Id.* at 536. The Connecticut Supreme Court disagreed, holding that the term "sudden" requires that the release "occurs quickly or happens abruptly." *Id.* The Court rejected the plaintiffs' argument that the term "sudden" was ambiguous because some dictionary definitions of the term "in certain circumstances, include a sense that the event being described occurred unexpectedly." *Id.* at 546. The Court noted that "[t]he existence of more than one dictionary definition is not the sine qua non of ambiguity. If it were, few words would be unambiguous." *Id.* The Court held that "[w]e cannot reasonably call 'sudden' a process that occurs slowly and incrementally over a relatively long time, no matter how unexpected or unintended the process." *Id.* at 544 (internal quotation omitted).

progressively deteriorated from the date that the concrete was poured through to the present. (ECF No. 29, Compl., ¶¶ 10-14). The gradual deterioration of the frost walls does not constitute a "sudden" event.

In *Metsack et al v. Liberty Mutual Fire Insurance Company*, 3:14-cv-01150-VLB, 2017 WL 706599 (D. Conn. Feb. 21, 2017), Judge Bryant, considering the same Allstate policy language at issue in this case, concluded that the Allstate policy's requirement of "sudden and accidental direct physical loss" meant that there was no coverage for "collapse" where it was undisputed that the plaintiffs' foundation walls "deteriorated over time, rather than 'suddenly'. . . ." 2017 WL 706599 at * 8. Here, as in *Metsack*, Plaintiffs allege that their frost walls experienced "deterioration" and "decay" and that "the process of decay occurs over the course of years." (ECF No. 29, ¶¶ 12, 16). Plaintiffs do not allege that their claimed loss was caused by a discernible "sudden" event during Allstate's policy period. Accordingly, there is no coverage under the Allstate Policy's limited coverage for collapse.

In *Alexander v. General Ins. Co. of America*, Docket No. 3:16-cv-0059, Judge Underhill granted a motion to dismiss a similar complaint alleging that deteriorating foundation concrete constituted a "collapse" within the scope of a homeowners' insurance policy. (Exh. A). Similar to the limited coverage provided by the Allstate Policy for an "entire collapse" that is "sudden and accidental," the policy at issue in *Alexander* limited the scope of collapse coverage to an "abrupt falling down or caving in." (*Id*., pp. 3, 12). Like the Allstate Policy, the policy in *Alexander* also provided, in defining the scope of "collapse" coverage, that a building could not be considered in a state of collapse even if it showed evidence of cracking, bulging, sagging, bending, leaning, settling, shrinking, or expansion. (Exh. A, pp. 3, 14-15, 22). The *Alexander* plaintiffs alleged that there were numerous cracks in their foundation walls, and that these walls

"were not behaving as they were designed and intended." (*Id.*, p. 5). They also claimed that the foundation walls were bulging and had cracked, shifted, and broken apart. (*Id.*, p. 15).

The *Alexander* court soundly rejected the plaintiffs' argument that the term "caving in" was ambiguous, and held that absent an allegation that the home or part of the home had *abruptly* fallen down or caved in, there could be no coverage for "collapse." (Exh. A, pp. 22-23). The Court also rejected the plaintiffs' argument that "bulging" could be construed to constitute "caving in" by noting that "[i]f the bulge eventually falls in, caves in, it doesn't matter that the caving in used to be a bulge. But you don't have a falling down of the wall; you have a bulging of the wall. And until it falls down, you don't have an abrupt collapse." (*Id.*, pp. 11-12). In so doing, the Court recognized that the plaintiffs' alleged damage, which consisted of bulging and cracking to the basement walls, fell within the exception from the definition of collapse for cracking, bulging, sagging, bending, leaning, settling, shrinkage or expansion. (*Id.*, pp. 3, 14-15, 22-23). The Court reiterated this position in its denial of the plaintiffs' motion for reconsideration, when it again found that "[p]laintiffs cannot avoid the fact that their basement walls are still standing. The only allegations of impairment to the structural integrity of the walls are allegations that the walls are 'cracking' or—alleged at oral argument—that they are 'bulging.' Both conditions are expressly excluded under the definition of the policy and it is clear that no collapse has occurred." *Alexander v. Gen. Ins. Co. of Am.*, supra, 2017 WL 188134 at *2. *See also Jemiola v. Hartford Casualty Ins. Co.*, (allegations of "cracking" or "bulging" in foundation walls stated conditions expressly excluded under the policy) (Exh. E at 19).

Here, the Allstate Policy requires a "sudden and accidental" "entire collapse." (Exh. C, p. 44). As discussed, under *Buell*, the term "sudden" is synonymous with "abrupt," the same term the Court construed in *Alexander*. Nothing in Plaintiffs' Complaint can plausibly be interpreted

14

as an allegation of a "sudden" collapse, as the Policy requires; to the contrary, the Complaint alleges "deterioration" and "decay" that has progressively occurred since the pouring of the foundation walls. (ECF No. 29, Compl., ¶¶ 10-16).

Plaintiffs' speculation that the process of decay "*may* cause" "sudden events" at some indefinite time does not constitute a plausible allegation of a "sudden" collapse. (ECF No. 29, Compl., ¶¶ 16-17). The only "sudden events"  that the Complaint alleges "may" occur, at some unspecified time,  are bulging of the frost walls "in some increment" or "pieces of concrete become dislodged and fall to the floor."  (*Id.*, ¶ 17). In addition to failing to meet the *Iqbal* plausibility standard due to their inexcusable vagueness, these allegations do not  state that  a "sudden" *collapse* occurred, or even that a sudden collapse *may* have occurred.

Like the policy in *Alexander*, the Allstate Policy provides that "[c]ollapse does not include settling, cracking, shrinking, *bulging* or expansion." (Exh. C, p. 44). Plaintiffs here allege damages that are specifically excluded from the Policy's limited coverage for collapse, namely "horizontal and vertical cracks," "'pattern cracking,'" and expansion of the concrete in the basement walls of the Property's addition. (ECF No. 29, Compl., ¶¶ 8, 9, 11). As the courts in *Alexander* and *Jemiola* recognized, a collapse must be "something other than a bulging . . . cracking, or expansion;" (Exh. A, p. 14;  Exh. E, pp. 18-20); and, under such policy language, "it is clear that no collapse has occurred" where the "only allegations of impairment to the structural integrity of the walls are allegations that the walls are 'cracking' or . . . 'bulging.'" *Alexander v. Gen. Ins. Co. of Am.*, *supra*, 2017 WL 188134 at *2.

In *Ass'n of Unit Owners of Nestani v. State Farm Fire & Cas. Co.,* 670 F. Supp. 2d 1156 (D. Or. 2009), *aff'd sub nom. Ass'n of Unit Owners of Nestani-A Grecian Villa v. State Farm Fire & Cas. Ins. Co.*, 434 F. App'x 579 (9th Cir. 2011), a case involving a claimed "collapse,"

the Oregon federal district court interpreted the term "sudden" consistent with the Connecticut

Supreme Court's opinion in *Buell*. Construing policy language very similar to Allstate's,[13] the

court held that a claim arising from water damage and decay occurring over time was not within

the policy's additional coverage for collapse, which provided in relevant part: "We insure only

for direct physical loss to covered property involving the ***sudden, entire*** collapse of a building or

any part of a building." *Id.* at 1161 (emphasis added). Like the Connecticut Supreme Court in

*Buell*, the court found that the term "sudden" "has a temporal element in the context of a collapse

endorsement and necessarily means 'abrupt,' thus precluding a gradual 'collapse' such as that

alleged by the plaintiff." *Id.* at 1163. The court held:

> Given the context of the Policy, I find persuasive defendant's argument that
> "sudden" in the collapse coverage clause has a temporal element. I thus interpret
> "sudden" in this context to mean "marked by or manifesting abruptness or haste"
> or "made or brought about in a short time." Merriam-Webster's Collegiate
> Dictionary 1248 (11th ed. 2004). Accordingly, conditions that gradually lead to
> collapse are excluded under the Policy, and only "sudden" collapses are covered
> under the extension of coverage for collapse. Given the undisputed facts that any
> "collapse" at Nestani resulted from water damage and decay "occurring over a
> period of time," this "collapse" was not "sudden" under the terms of the Policy.
> Plaintiff's claimed loss therefore does not meet the terms of the extension of
> coverage for collapse.

*Id.; see also Amitie One Condo. Ass'n v. Nationwide Prop. & Cas. Ins. Co.,* Docket No. 1:07-

CV-01756, 2010 WL 5088231 at *9 (M.D. Pa. Aug. 31, 2010) (policy that covered "sudden"

sinkhole collapse did not apply where plaintiff's own consultant stated that damage was

progressive and connected to long-term defects).

What Plaintiffs themselves characterize as the progressive "decay" of the frost walls of

the Property—without resulting in a temporally abrupt falling down of a building or part

thereof—cannot, by any reasonable construction, constitute a "sudden" and "entire" collapse

---

[13] The policy in *Nestani* provided: "We insure only for direct physical loss to covered property involving the sudden, entire collapse of a building or any part of a building." *Id.* at 1161. As in this case, the collapse had to be caused by certain specified perils, including "hidden decay," the peril that Plaintiff claims triggered the collapse.

under the Allstate Policy. (ECF No. 29, Compl., ¶¶ 10-17). The Policy's collapse coverage further provides that "collapse" does not include cracking and expansion, the very conditions Plaintiffs claim has affected the frost walls of the Property. (*Id*., ¶¶ 8, 11). Moreover, a loss that Plaintiffs characterize as progressive decay over time cannot be considered a "sudden" and "entire" collapse under the Allstate Policy, as no "sudden"—or temporally abrupt—event is alleged to have actually occurred. (Exh. C., p. 44; ECF No. 29, Compl., ¶¶ 10-13). Accordingly, Count I must be dismissed.

**B.      Because Count I Should be Dismissed for Failing to Allege a Plausible Claim for Breach of the Insurance Policy, Count II Should Also be Dismissed.**

The Connecticut Supreme Court has recognized that when plaintiffs' breach of contract claims fail as a matter of law, their CUTPA/CUIPA claims premised on allegedly improper denials of coverage must fail as well. *See*, *e.g.*, *Zulick v. Patrons Mut. Ins. Co.*, 287 Conn. 367, 378 (2008) (where insurer's interpretation of policy was correct, there could be no CUTPA/CUIPA violation); *see also Metsack, supra; Rancourt v. Allstate Ins. Co.*, 2008 WL 5255560 at *3 (Conn. Super. Ct. December 1, 2008) ("[S]ince the defendant [insurer] had no obligation to pay under the policy, the defendant could not have violated CUIPA or CUTPA."); *Wright v. State Farm Mutual Automobile Ins. Co.*, 1997 WL 746434 at *4 (Conn. Super. Ct. Nov. 18, 1997) ("Having no obligation to pay under the policy, State Farm could not have violated CUIPA or CUTPA.").

**C.      Independent of Its Ruling On the Motion to Dismiss Count I of the Complaint, Count II Should Be Dismissed Because It Fails to State a Cause of Action for Violation of CUTPA/CUIPA**

Under Connecticut law, a CUTPA claim against an insurer must be premised on a specific violation of CUIPA. *See State v. Acordia, Inc.*, 310 Conn. 1, 37 (2013) ("[U]nless an insurance related practice violates CUIPA or, arguably, some other statute regulating a specific

type of insurance related conduct, it cannot be found to violate any public policy and, therefore, it cannot be found to violate CUTPA."). Plaintiffs claim that Allstate violated one subsection of CUIPA, Conn. Gen. Stat. § 38a-816(6)(f), which proscribes "not attempting in good faith to effectuate prompt, fair and equitable settlements of claims in which liability has become reasonably clear." (ECF No. 29, Compl., ¶ 38). An insurer that has a good faith basis for denying coverage cannot be in violation of § 38a-816(6)(f), which requires, as a condition, that "liability has become reasonably clear." This requirement "means that the existence of liability has to be <u>substantially certain</u>." *Tucker v. Am. Int'l Group, Inc.*, 2015 WL 403195 at n.48 (D. Conn. Jan. 28, 2015) (quoting 2 Insurance Claims and Disputes § 9:35 (6th ed. updated March 2014)).4)) (emphasis added). As Judge Underhill succinctly noted during oral argument on Liberty's motion for summary judgment in *Roberts v. Liberty Mutual Fire Ins. Co.*, *supra*,[14] which involved similarly policy language, "if the . . . insurance companies are right about their interpretation of collapse and substantial impairment then how can they have violated CUTPA/CUIPA?" (Exh. F, p. 20). At a minimum, even if this Court were to disagree with Judge Underhill's position in both *Alexander* and *Roberts*, it cannot be said that Allstate's liability was "reasonably clear." Where Allstate's coverage position was, at a minimum, fairly debatable, there can be no violation of Conn. Gen. Stat. § 38a-816(6)(f). *See*, *e.g.*, *Chi. Title Ins. Co. v. Bristol Heights Ass'n, LLC*, 2009 WL 5698103 at *8 (Conn. Super. Ct. Dec. 30, 2009) (granting summary judgment in favor of insurer on CUTPA/CUIPA claim because "liability was anything but 'reasonably clear'"); *Bauco v. Hartford Fire Ins. Co.*, 2004 WL 573829 at *14 (Conn. Super. Ct. Mar. 3, 2004) (same result). Accordingly, the Court should dismiss Count II.

---

[14] A copy of the transcript of the summary judgment hearing in *Roberts* is attached as Exhibit F.

## V.      CONCLUSION

Plaintiffs' Complaint alleges a progressive condition—the cracking of the frost walls of the Property that has occurred over time—not an "entire collapse" that is a "sudden and accidental" loss under Allstate's limited coverage for collapse. The conditions described by Plaintiffs—the gradual cracking of concrete walls over time, caused by defective materials in the concrete—does not fall within the collapse coverage, and are specifically excluded in multiple sections of the Policy, including the exclusion for "cracking . . . of walls" and the exclusion for loss caused by faulty materials. For these reasons, Count I, alleging a breach of contract claim, should be dismissed. If the Court grants Allstate's motion to dismiss Count I, then Count II, alleging a violation of CUTPA/CUIPA, must similarly be dismissed, as it cannot be maintained in the absence of a breach of contract claim.

Even if the Court declines to grant the motion to dismiss Count I, however, the present case involves nothing more than a dispute over the terms of the coverage afforded under a policy of insurance, and Plaintiffs' attempts to reconfigure this coverage dispute into a violation of CUTPA and CUIPA (Count II) should be rejected. Because, at minimum, Allstate's coverage position is "fairly debatable," there can be no violation of CUTPA through breach of Conn. Gen. Stat. § 38a-816(6)(f).

For the foregoing reasons, Plaintiffs have failed to state a claim against Allstate upon which relief can be granted. Counts I and II of the First Amended Complaint should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6).

DEFENDANT
ALLSTATE INSURANCE COMPANY

*/s/ Raymond T. DeMeo*
Raymond T. DeMeo (ct02189)
Jessica A. R. Hamilton (ct29702)
Robinson & Cole LLP
280 Trumbull Street
Hartford, CT 06103
Phone:  860-275-8200
Fax:  860-275-8299
rdemeo@rc.com
jhamilton@rc.com

<u>**CERTIFICATION**</u>

I hereby certify that on April 26, 2017, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing.  Notice of this filing will be sent via e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.  Parties may access this filing though the Court's CM/ECF System.


*/s/ Raymond T. DeMeo*
Raymond T. DeMeo