# UNITED STATES DISTRICT COURT
## FOR THE
## DISTRICT OF CONNECTICUT

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

|  |  |  |
|---|---|---|
| | \* | |
| LINDA M. CLOUGH and | \* | |
| GARNET DRAKIOTES | \* | |
| Plaintiffs | \* | |
| | \* | Civil Action No. |
| VS. | \* | 3:17-cv-00140 (JBA) |
| | \* | |
| ALLSTATE INSURANCE COMPANY and | \* | May 17, 2017 |
| LIBERTY INSURANCE CORPORATION | \* | |
| Defendants | \* | |
| | \* | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO THE DEFENDANT, ALLSTATE INSURANCE COMPANY'S, MOTION TO DISMISS

NOW COME the plaintiffs, Linda M. Clough and Garnet Drakiotes, and submit the following Memorandum of Law in Opposition to the defendant, Allstate Insurance Company's (hereinafter "Allstate") Motion to Dismiss.

## INTRODUCTION

This controversy concerns Allstate's failure to indemnify the plaintiffs for damage to their home allegedly covered by one or more policies of homeowner's insurance issued by Allstate and purchased by the plaintiffs. The plaintiffs purchased the home at 70 Fitch Meadow Lane, South Windsor, Connecticut in July of 1998. First Amended Complaint, Document No. 29, ¶ 5. The home was built in 1998. *Id.* In mid to late July of 2016, the plaintiffs noticed a series of horizontal and vertical cracks throughout most of the frost walls of their home. *Id.* at ¶ 8. The plaintiffs immediately undertook an investigation of the condition, its cause, and the methods of repair by consulting with various contractors and professionals. *Id.* at ¶ 9. Upon

ORAL ARGUMENT REQUESTED

further inquiry, the plaintiffs discovered that the form of "pattern cracking" found in the frost walls was caused by the presence of a chemical compound found in certain concrete walls constructed with concrete most likely mixed by the J.J. Mottes Company between the late 1980s and early 1990s. *Id.* at ¶ 10-11.  This particular chemical compound is found in the aggregate of the concrete and will – with its mixture with the water, sand, and cement necessary to form the concrete – begin to oxidize and expand, breaking the bonds of the concrete internally and reducing the concrete to rubble. *Id.* at ¶ 11.  There is no known scientific or engineering method or process effective in reversing the deterioration. *Id.* at ¶ 12.  It is only a matter of time until the frost walls fall in, which will in turn cause the entire building to fall into the basement. *Id.* at ¶ 14-15.

Having observed these conditions and having learned of the substantial impairment to the structural integrity of their home, the plaintiffs made a timely claim for coverage to Allstate on August 8, 2016. *Id.* at ¶ 18-19.  Allstate denied the plaintiffs' claim by way of letter dated November 16, 2016 claiming that the homeowner's policy does not afford coverage for damage caused by the condition affecting the frost walls. *Id.* at ¶ 20.  However, the insurance policy at issue contains clear language providing coverage for the collapse of a building structure or any part of a building structure caused by hidden decay or the use of defective materials or methods in construction. *Id.* at ¶ 21.

In response to Allstate's denial of coverage, the plaintiffs commenced suit in Tolland Superior Court on or about January 3, 2017.  The co-defendant, Liberty Insurance Corporation, removed this matter to the Federal District Court on January 30, 2017, invoking diversity jurisdiction.  Following a pre-filing conference, the plaintiffs amended their complaint on April

5, 2017, alleging breach of contract, and unfair and deceptive trade practices in violation of the Connecticut Unfair Trade Practices Act ("CUTPA") and the Connecticut Unfair Insurance Practices Act ("CUIPA") against Allstate.  Allstate file this motion to dismiss the First Amended Complaint on April 26, 2017.

## ARGUMENT

Allstate seeks to dismiss both counts asserted against it in the plaintiffs' First Amended Complaint.   In doing so, Allstate misapplies both the standards for insurance policy interpretation and the standards for pleading.  First, the terms of the policy appear to provide coverage for the collapse of a building structure or the collapse of part of a building structure, provided that it is caused by an enumerated peril.  *Id.*  That said, the plaintiffs submit that the policy language asserted by Allstate to exclude their claim is ambiguous and, therefore, must be construed against Allstate and in favor of coverage.  Second, the plaintiffs assert that they have adequately pleaded that Allstate was acting pursuant to its general business practice in failing to settle their claim in good faith and, therefore, they have stated a claim for unfair and deceptive practices in violation of CUIPA through the private right of action granted by CUTPA.

I.      **Standard for Ruling on a Motion to Dismiss.**

The Federal Rules require only that a plaintiff plead "'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the … claim is and the grounds upon which it rests.'"  *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555 (2007) *citing Conley v. Gibson,* 355 U.S. 41, 47 (1957).  While a complaint must contain enough factual content to state a claim that is plausible on its face, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable

inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009).  This plausibility standard is not a "probability requirement." *Id.*

While *Twombly* marked a departure from prior pleading standards it did not apply a "heightened pleading standard." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 569 n. 14 (2007). In particular, a plaintiff may satisfy the plausibility requirement with allegations made "upon information and belief" particularly where facts are within the possession and control of the defendant. *Artisa Records LLC v. Doe 3,* 604 F.3d 110, 120 (2d Cir. 2010).  A plaintiff does not need to plead with facts with exquisite detail, but must at least provide enough facts to raise a reasonable expectation that discovery will reveal evidence of the misconduct complained of. *Van Dorsten v. Provident Life and Accident Ins. Co.,* 554 F.Supp.2d 285, 289 (D. Conn. 2008). Though the Supreme Court has recently advanced a more narrow reading of the pleading rules, it still adheres to the proposition that "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and 'that a recovery is very remote and unlikely.'" *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 556 (2007).

## II.  <u>Standard for Insurance Policy Interpretation.</u>

The standards for construing the terms of an insurance policy in Connecticut are clear. Construction of an insurance policy involves a determination of the parties' intent as expressed by the policy language. *Conn. Ins. Guar. Ass'n v. Fontaine,* 278 Conn. 779, 784 (2006). However, when performing this analysis, the court must construe the policy terms "as laymen would understand them and not according to the interpretation of sophisticated underwriters." *Vermont Mut. Ins. Co. v. Walukiewicz,* 290 Conn. 582, 592 (2009).  In particular, "the policyholder's expectations should be protected as long as they are objectively reasonable from

the layman's point of view." *Id.*  Where policy terms are unambiguous those terms are accorded

their natural and ordinary meaning.  *Jacaruso v. Lebski,* 118 Conn. App. 216, 233 (2009).

However, where a term is susceptible to more than one reading, the term is construed against the

insurance company as they drafted the policy terms.  *New London County Mut. Ins. Co. v.*

*Zachem,* 145 Conn. App. 160, 166 (2013).   Ambiguous insurance policy terms are not only

construed against the insurance company, they are construed in favor of coverage.  *Middlesex*

*Ins. Co. v. Mara,* 699 F.Supp.2d 439, 446-447 (D. Conn. 2010); *Beach v. Middlesex Mut. Ass.*

*Co.,* 205 Conn. 246, 249-250 (1987).

III.    **The Plaintiffs Have Properly Pleaded a Claim for Breach of Contract.**

The plaintiffs suggest that they have properly pleaded a claim for breach of contract with

respect to the coverage afforded under one or more of the homeowner's insurance policies issued

to them by Allstate.   The homeowner's insurance policies issued by Allstate clearly provide

coverage for the collapse of a building structure or any part of a building structure, if that

collapse is caused by an enumerated peril.  First Amended Complaint, Document No. 29, ¶ 21;

Allstate's Exhibit C, form AP472, p. 15, ¶ 11.  The Allstate insurance policies do not define the

term collapse and, as a result, a "collapse" loss occurs for the purposes of those insurance

policies where there has been a substantial impairment to the structural integrity of a building

structure or any part of a building structure.  *Beach v. Middlesex Mut. Ass. Co.*, 205 Conn. 246,

252 (1987)(where the Supreme Court of Connecticut, in the absence of a policy definition,

provided its definition of the word "collapse").  The plaintiffs' First Amended Complaint alleges

that the frost walls of their home have collapsed due to one (1) of two (2) enumerated perils;

hidden decay or defective materials or methods used in the construction of their home.   First

Amended Complaint, Document No. 29, ¶ 10-14, 21.

There can be no reasonable doubt that the frost walls are part of the covered building structure as the Allstate policies define the term "building structure" as "a structure with walls and a roof."  Allstate's Exhibit C, Form AP472, p. 3, ¶ 5.  The concrete of these walls has been alleged to have failed to the degree that there has been a "substantial impairment to the structural integrity" of the basement walls and, therefore, that part of the building structure has collapsed.  First Amended Complaint, Document No. 29, ¶ 13; *Beach v. Middlesex Mut. Ass. Co.*, 205 Conn. 246, 252 (1987).  Where all or part of the building has collapsed due to an enumerated cause, coverage of the loss becomes the obligation of the insurer.  Allstate seeks to avoid that obligation by suggesting that the damage suffered to the frost walls of the building structure was not "sudden."  Allstate's Exhibit C, Form AP472, p. 15, ¶ 11.  This argument ignores accepted principles for interpretation of insurance policy terms.  To the contrary, the plaintiffs contend that the collapse provision is ambiguous with respect to the term "sudden" in the phrase "sudden and accidental," which ambiguity must be construed against Allstate and in favor of coverage.

**A.     The Provision Requiring Damage to be "Sudden and Accidental" is Ambiguous in the Context of the "Collapse" Coverage Afforded by the Allstate Policies.**

Unlike many companies in Connecticut who have proactively sought to avoid liability for the problems associated with the JJ Mottes concrete, Allstate has not defined the term "collapse" in its insurance policies.  Allstate's Exhibit C, Form AP472, p. 15, ¶ 11.  As discussed more fully above, a "collapse" occurs under Allstate's policies where there has been a "substantial impairment to the structural integrity" of the building.  *Beach v. Middlesex Mut. Ass. Co.*, 205 Conn. 246, 252 (1987).  Respectfully, the term "sudden," as found in Allstate's policy is

inconsistent with the definition of "collapse" that has been supplied by the Connecticut Supreme Court.  Where the term "collapse" is not explicitly defined by the insurance policy – as is the case here – the Connecticut Supreme Court has explicitly rejected the notion that a "collapse" must involve a sudden or catastrophic event.  *Beach v. Middlesex Mut. Ass. Co.*, 205 Conn. 246, 252 (1987).  To the contrary, the Connecticut Supreme Court stated unequivocally that a "collapse" occurs where the structural integrity of the building becomes substantially impaired.  *Id.*  In so defining "collapse," the Connecticut Supreme Court accepted as more persuasive the reasoning of those cases finding that "collapse" should mean "substantial impairment" because requiring an insured to wait for a sudden or catastrophic falling down would be "economically wasteful," to say nothing of the potential for injury or death resulting from such a calamity.  *Id.* at 253 n.2.  The *Beach* Court also based its decision to define "collapse" as "substantial impairment" because waiting a calamitous event would conflict with the insured's duty to mitigate damages.  *Id.*  Allstate's attempt to impose the characteristic of suddenness to its collapse provision is so inconsistent with the Connecticut Supreme Court's supplied definition of the term "collapse," and the reasoning upon which that court supplied definition was based, that it would render coverage for the substantial impairment of the structural integrity of a building hollow.  Therefore, Allstate's proffered interpretation of the "collapse" provision should be rejected.

There is a second layer of inconsistency to Allstate's proffered policy interpretation that emanates not from case law, but from the policy language itself.  The purported blanket exclusion for all gradually occurring "collapses" is antithetical to most of the events purportedly covered by the section.  In fact, the majority of the specifically enumerated perils covered by the

"collapse" provision contemplate damage occurring over a period of time.  Allstate's Exhibit C, Form AP472, p. 15, ¶ 11.  For instance, homeowners faced with the JJ Mottes concrete typically look to two (2) of the enumerated "collapse" perils when seeking coverage – hidden decay or defective materials used in construction.  Allstate's Exhibit C, Form AP472, p. 15, ¶ 11.  "Decay" is a process which, by definition, occurs over a period of time.  *See* Webster's New World College Dictionary, 1997, which defines "decay" as "to lose strength, soundness, health, beauty, prosperity, etc *gradually."*  (emphasis added).  Similarly, by allowing coverage for a "collapse" due to defective materials used in construction that occurs *after* the completion of such construction, the policy contemplates damage stretching over the useful life of a building. Furthermore, a "collapse" is also covered by the policy if it is the result of hidden vermin or insect damage.  Allstate's Exhibit C, Form AP472, p. 15, ¶ 11.  Respectfully, insect and vermin damage, like hidden decay, does not cause either a substantial impairment to the structural integrity of a building, much less a catastrophic falling down of a building, in the short term, but rather, such damage would only impact a structure to the point of collapse gradually over a period of time.  As such covered perils for "collapse" are clearly contemplated to be gradual in nature, the policy interpretation proffered by Allstate seems quite inconsistent with the intent of the coverage provided.

The notion that the term "sudden" renders the "collapse" provision ambiguous has been accepted by at least one (1) other court with the occasion to address this specific issue.  *See Kelly v. Balboa Ins. Co.,* 897 F.Supp.2d 1262, 1268 (M.D. Fla. 2012).  The *Kelly* court construed the phrase "sudden and accidental" in the context of a collapse provision similar to the one at issue

in this motion.[1]  *Id.*   The Court found that the term "sudden" rendered the provision ambiguous because the enumerated perils of "hidden decay" and "hidden insect or vermin damage" occur over a period of time "by their very nature."  *Id.*   The Court then found that the inclusion of the term "sudden" in a provision providing coverage for long term perils such as hidden insect damage, rendered the whole provision ambiguous.  *Id.*   The Court then construed the provision against the insurer to find that a "collapse" need not be "sudden" where it is caused by hidden decay or hidden insect damage.  *Id.*  The plaintiffs suggest that this decision is well reasoned and that this Honorable Court should construe the collapse provision against the insurer and in favor of coverage by finding that a collapse caused by those perils that naturally occur gradually need not be "sudden."

These sentiments were also expressed by the Second Circuit Court of Appeals, in construing collapse coverage in general.  In *Dalton,* the Court rejected the notion that a collapse must involve a "sudden destructive force" as inconsistent with the enumerated collapse perils of hidden decay and hidden insect or vermin damage.  *Dalton v. Harleysville Worcester Mut. Ins. Co.,* 557 F.3d 88, 93 (2d Cir. 2009).  The Court explained that "[b]y their very nature, hidden decay and hidden insect or vermin damage occur slowly and not as a sudden destructive force."  *Id.*  Therefore, the Court found that even if a collapse loss may typically require some sudden event, "that is surely not the case where the policy in question defines collapse in a manner which expressly includes conditions that occur only slowly."  *Id.*

---

[1] Like Connecticut, Florida has interpreted the term "collapse" to mean a substantial impairment of a structure. *Kelly v. Balboa Ins. Co.,* 897 F.Supp.2d 1262, 1268 (M.D. Fla. 2012) *citing Auto Owners Ins. V. Allen,* 362 So.2d 176, 178 (Fla. 2d DCA 1978).

In contrast, Allstate cites to the *Buell* case, which construed the phrase "sudden and accidental," not in connection with the "collapse" provision in a standard homeowner's insurance policy, but rather, in the context of a pollution exclusion found in a commercial general liability policy.  The plaintiffs suggest that because of the inherent gradual nature of the majority of the enumerated "collapse" perils, the reasoning of *Buell* bears little applicability to the policy language at issue.  The *Buell* Court construed the term "sudden and accidental" in the context of an exception to a commercial general liability policies exclusion for bodily injury resulting from pollution.  *Buell Indus. Inc. v. Greater New York Mut. Ins. Co.,* 259 Conn. 527 (2002).  The policy at issue in the case excluded coverage related to pollution, but did provide limited coverage where the discharge of the pollution was "sudden and accidental."  *Id.  Buell* was well reasoned in the context of pollution as the damage or event is the same in either event – the discharge of pollution – but that it was only the circumstances of the discharge that affected the issue of coverage.  This prompted the Court to find that a temporal element of abruptness was necessary to meet coverage, otherwise the term "sudden" would be superfluous and there would be potential coverage for pollution occurring over a long period.  *Id.* at 540-541.  We are dealing here with entirely different policy language where the application of a temporal quality would render the coverage provided a sham.

Whereas pollution can occur due to a sudden or a gradual release of pollutants, there is no "sudden" type of decay.  Nor is a collapse caused by defective materials, where that collapse may occur any time after construction, necessarily sudden.  To impose the same temporal quality found in the pollution coverage analysis on the "collapse" provision, with its gradually occurring enumerated perils, would serve only to render coverage under the "collapse" provision a nullity.

- 10 -

Such a construction should not be imposed by the court.   *Northrop v. Allstate Ins. Co.*, 247 Conn. 242, 251, (1998).  To impose such a construction on this insurance policy would serve only to lull the layman into a false sense of security, by believing that "collapse" due to long term perils will be covered when, by the use of inconsistent terminology, Allstate is free, after the claim has been filed, to deny coverage for gradual losses.  The plaintiffs suggest that any lay insured would rightfully and reasonably believe that terms such as "decay" contemplate gradual damage and that this reasonable expectation should be protected.  *Vermont Mut. Ins. Co. v. Walukiewicz,* 290 Conn. 582, 592 (2009).

The plaintiffs recognize that their general claims of ambiguity with respect to the phrase "sudden and accidental" were rejected by this Honorable court in *Metsack.  Metsack v. Liberty Mut. Ins. Co., et al.,* 2017 WL 706599, * 6-8 (D.Conn. 2017).  While the plaintiffs disagree with the analysis in *Metsack* as it construes an ambiguity in favor of the insurance company, which is not permitted under Connecticut law, that matter is also distinguishable from this instant claim. *Middlesex Ins. Co. v. Mara,* 699 F.Supp.2d 439, 446-447 (D.Conn. 2010); *Beach v. Middlesex Mut. Ass. Co.,* 205 Conn. 246, 249-250 (1987).   While *Metsack* found it undisputed that the decay was progressive and not in any way sudden, the plaintiffs do dispute that notion.  *Metsack v. Liberty Mut. Ins. Co., et al.,* 2017 WL 706599, * 8 (D.Conn. 2017).  While the plaintiffs' walls are afflicted by the same deterioration condition as the Metsacks', they specifically allege that while the condition is progressive it causes sudden events throughout its progression.   First Amended Complaint, Doc. No. 29, ¶ 16-17.   In particular, as the concrete weakens it allows external forces to act upon it in sudden events whereby the walls bulge and shift in some increment or pieces of the concrete become dislodged and fall to the floor.  *Id.*  As a result, the

plaintiffs respectfully submit that the allegations of their complaint suggest a structural condition that is the result of a series of sudden events, ultimately driven by a long term chemical reaction, but sufficiently sudden for purposes of the language contained in the Allstate policies. Therefore, when properly construing the allegations of the complaint and the language of the insurance policy in favor of the plaintiffs, the plaintiffs suggests that their allegations are sufficient to raise a plausible claim for relief.

> **B.**    **Allstate's Reliance on *Alexander* and *Nestani* is Misplaced.**

Allstate attempts to bolster its arguments with respect to the term "sudden" by reference to two district court cases and one state superior court case involving policies with materially different collapse provisions.  The more salient of these cases, due to the fact that it was decided by this Honorable Court, is the case of *Alexander v. General Ins. Co.*[2]  The *Alexander* matter involved policy language so distinct from that in this matter as to render it completely irrelevant to the analysis of the Allstate policies.   The policies at issue in *Alexander* contained an exhaustive definition of the term "collapse," which the Court construed as excluding coverage for the plaintiffs' claim and rendering those policies outside of the rule expressed in *Beach.*  The policy definition of the term "collapse" at issue in *Alexander* provides:

> "a. With respect to this additional coverage:
> 1) Collapse means an abrupt falling down or caving in of a building or any part of a building with the result that the building or part of the building cannot be occupied for its current intended purpose.
> 2) A building or any part of a building that is in danger of falling down or caving is not considered to be in a state of collapse.
> 3) A part of a building that is standing is not considered to

---

[2] The Transcript of the Hearing, in which Judge Underhill ruled from the Bench, is attached to the defendant's Motion at Exhibit A.

be in a state of collapse even if it has separated from
another part of the building.

4)   A building or any part of a building that is standing is not
considered to be in a state of collapse even if it shows
evidence of cracking, bulging, sagging, bending, leaning,
settling, shrinkage or expansion."

Exhibit A, Form HOM-7030/EP R2 1/09, p. 10, ¶ 11.

Contrary to Allstate's assertion, it is clear that the policies at issue in *Alexander* contain a materially different collapse provision from that found in the Allstate's policies at issue in this matter.

As a result of this materially different policy language, Allstate's analysis of that case is plainly irrelevant to this matter.  Allstate points to the portions of the *Alexander* decision where Judge Underhill considered whether the term "caving in" was ambiguous in the context of the structural failure mechanisms displayed by the plaintiffs' home.  Unlike the policy in *Alexander,* however, Allstate's policy does not define the term "collapse" and therefore, whether or not a "caving in" has occurred in this instance is of no consequence.  As this matter does not involve the collapse definition at issue in *Alexander* that opinion offers little instruction in this case. Certainly, a falling down of a structural element would be abrupt by its very nature, however, as discussed more fully above, there need not be a falling down under Allstate's policy as collapse occurs where there is a substantial impairment to structural integrity.  Much the same can be said of the *Jemiola* matter, as that case involved identical policy language to that in *Alexander.* Allstate's Exhibit E, p. 2.

Similar considerations apply to the *Nestani* matter cited by Allstate in support of its interpretation of the term "sudden."  The policy at issue in *Nestani* also involved a specific definition of collapse that is lacking in the Allstate policy, providing that "[c]ollapse means

actually fallen down or into pieces." *Ass'n of Unit Owners of Nestani v. State Farm Fire and Cas. Co.,* 670 F.Supp.2d 1156, 1162 (D. Or. 2009). The plaintiffs suggest that this distinction is material, particularly in reference to the Ninth Circuit's treatment of the matter on appeal.  The Ninth Circuit affirmed the District Court's analysis on the grounds that the conclusion that no collapse had occurred was appropriate given the policy definition of the term.  *Ass'n of Unit Owners of Nestani-A Grecian Villa v. State Farm Fire and Cas. Co.,* 434 Fed.Appx. 579 (9th Cir. 2011).  The Ninth Circuit agreed with the District Court's determination that no event meeting the definition of "collapse" had occurred and that the state of the insured structure was one of impairment, which was insufficient under that particular collapse provision.  *Id.* Importantly, the Ninth Circuit declined to review the District Court's reasoning as to the term sudden as it was able to affirm the decision solely interpretation of the collapse definition.  As a result, the plaintiffs suggest that this matter is distinguishable and uninstructive.

In contrast to *Alexander, Jemiola,* and *Nestani,* the Allstate policies do not define the term "collapse" rendering much, if not all, of the reasoning in those matters plainly inapplicable. Allstate makes reference to additional limiting language in its collapse provision, perhaps to suggest that *Beach* should not apply to its policies.   However, the notion that this slight difference in the policy language contained in the Allstate policy is so markedly different that *Beach* does not apply or should otherwise be revisited has also been rejected by this Honorable Court in *Bacewicz*.   The policy in *Bacewicz* contained a similar collapse provision to that found in the Allstate policies, which provision also contains the language stating "[c]ollapse does not include settling, cracking, shrinking, bulging or expansion."  Allstate's Exhibit A, Form AP472, p. 15, ¶ 11; *Bacewicz v. NGM Ins. Co.,* 2010 WL 3023882, *6 (D. Conn. 2010).  This Honorable

Court properly applied the *Beach* standard, even in light of this slightly different policy language, noting that "[l]ike the contract language at issue in the *Beach* case, the Bacewiczes' policy excludes "settling, cracking, shrinking, bulging, or expansion" from its definition of 'collapse.'" *Id.* This Honorable Court found that even in light of this differing policy language the collapse provision is reasonably susceptible to more than one interpretation. *Id.* This Honorable Court suggested that it is not the presence of a crack or a bulge that makes for a "collapse," but rather culmination of a covered peril resulting in a substantial impairment of the structural integrity of the insured building that is treated as a "collapse." *Id.* In so finding, this Honorable Court noted that "it is difficult—if not impossible—to imagine any 'collapse' that did not at some point manifest itself in the form of cracks, bulges, or other physical deformities." *Id.* Accordingly, the plaintiffs suggest that this Honorable Court that *Beach* very much applies and that their home has "collapsed" for purposes of the Allstate policies as a substantial impairment to structural integrity of the basement walls has occurred.

**IV.   The Plaintiffs Have Properly Pleaded a Claim for Violation of CUIPA.**

The State of Connecticut prohibits insurance companies from employing unfair and deceptive practices while conducting the business of insurance. Conn. Gen. Stat. § 38a-815. Among the many acts and practices defined to be "unfair and deceptive" is the failure of an insurance company to "attempt[] in good faith to effectuate prompt, fair and equitable settlements of claims in which liability has become reasonably clear." Conn. Gen. Stat. § 38a-816(6)(F). The plaintiffs have alleged that Allstate has wrongfully denied their claim despite the lack of an applicable policy exclusion. First Amended Complaint, Document No. 29, ¶ 33-34. The plaintiffs further allege that Allstate has instead relied upon policy exclusions plainly

inapplicable to their claim for coverage. *Id.* Moreover, the plaintiffs have alleged not only that Allstate relied upon inapplicable policy exclusions, but that they did so to mislead them into believing that there was no coverage for the damage suffered to their home. *Id.* at ¶ 33. The plaintiffs have further alleged that Allstate has engaged in this conduct as a part of its general business practice. *Id.* at ¶ 54-58. The plaintiffs suggest that these allegations, read in the light most favorable to them, properly allege that Allstate engaged in conduct proscribed by CUIPA.

This Honorable Court has had the opportunity to construe allegations nearly identical to the plaintiffs on a number of prior occasions. The sufficiency of allegations identical or nearly identical to these have been sustained by this Honorable Court on seven (7) separate occasions. *Shawn M. Kowalyshyn, et al. v. Peerless Ins. Co., et al.,* 3:16-cv-00148 (JAM), attached hereto at Exhibit B; *David Mensher, et al. v. Liberty Mut. Fire Ins. Co.,* 3:15-cv-01007 (WWE), attached hereto at Exhibit C; *Stephen A. Metsack, et al. v. Liberty Mut. Fire Ins. Co., et al.,* 2015 WL 5797016, * 9-11 (D. Conn. 2015); *Raymond G. Gabriel, et al v. Liberty Mut. Fire Ins. Co.,* 2015 WL 5684063, * 5 (D. Conn. 2015); *Stephen Belz, et al. v. Peerless Ins. Co.,* 46 F.Supp.3d 157, 165-167 (D. Conn. 2014); *Steven Karas, et al. v. Liberty Mut. Ins. Co.,* 33 F.Supp.3d 110, 117 (D. Conn. 2014); *Danny Panciera, et al. v. Kemper Independence Ins. Co.,* 2014 WL 1690387, * 4-5 (D. Conn. 2014). In particular, two (2) of these prior decisions have stated clearly that citation to inapplicable exclusions in denying coverage supports the notion that an insurer has engaged in conduct proscribed by CUTPA/CUIPA. *Raymond G. Gabriel, et al v. Liberty Mut. Fire Ins. Co.,* 2015 WL 5684063, * 5 (D. Conn. 2015); *Steven Karas, et al. v. Liberty Mut. Ins. Co.,* 33 F.Supp.3d 110, 117 (D. Conn. 2014).

Allstate attempts to distinguish this matter from the overwhelming number of matters

finding similar allegations similar by again suggesting that the *Alexander* analysis applies to this matter coupled with statements made by Judge Underhill at an oral argument renders the issue of coverage fairly debatable.  As discussed more fully above, the *Alexander* case involved policy language so materially different from that at issue in this matter that it is inapplicable to the analysis of coverage in this matter and should not have been relied upon by Allstate in any meaningful way.  Furthermore, the *Roberts* colloquy cited by Allstate is simply not a decision that can be relied upon.  Judge Underhill did make certain statements in an oral argument on a motion for summary judgment, however, he took that motion under advisement and has not, at this point in time, entered an order consistent or inconsistent with his statements at oral argument.  In any event, the plaintiffs suggest that as they have properly pleaded a claim for violation of the consumer protection statutes, Allstate's arguments as to whether coverage was fairly debatable are premature.  The *Tucker* matter cited by Allstate for the proposition that liability has to be "substantially certain" is not only distinguishable from this matter in a material way, but also, a closer examination of the cited principle undercuts Allstate's reliance on the matter.

*Tucker* involved a "claims made" policy rather than an "occurrence" policy and involved a claim that was clearly made outside of the policy period at issue and established by a previous judgment.  *Tucker v. American Intern. Group,* 2015 WL 403195 (D. Conn. 2015).  This particular factual record led to the resounding conclusion that liability had not become reasonably clear.  In a footnote, *Tucker* cited to a hornbook opinion that for liability to be reasonably clear for purposes of an unfair insurance practices statute, the existence of liability has to be substantially certain.  *Id.* at *27 n48.  By way of explanation as to when liability is

substantially certain, *Tucker* referred to the similar standard found in Massachusetts law for determining whether liability is reasonably clear for the purposes of M.G.L. c. 176D – Massachusetts' iteration of the uniform unfair insurance practices act – which standard was expressed in a Massachusetts Federal District Court case. *Id. citing Bohn v. Vermont Mut. Ins. Co.,* 922 F.Supp.2d 138, 146-147 (D. Mass. 2013).   Under the standard cited by *Tucker,* liability is reasonably clear "if a reasonable person, with knowledge of the relevant facts and law, would probably have concluded that the insurer was liable to the plaintiff." *Bohn v. Vermont Mut. Ins. Co.,* 922 F.Supp.2d 138, 146-147 (D. Mass. 2013).   However, under this objective standard employed in Massachusetts, it is up to the "fact finder to determine whether a reasonable person, with knowledge of the relevant facts and law, would probably have concluded, for good reason, that the insurer was liable to the plaintiff." *Demeo v. State Farm Mut. Auto Ins. Co.,* 38 Mass. App. Ct. 955, 956-957 (1995).   Even under the objective standard cited by *Tucker*, it is up to the jury to determine whether liability became reasonably clear and, as a result, the issue is not appropriate for resolution at the pleading stage.   Therefore, the plaintiffs suggest that they have pleaded a claim for violation of CUTPA/CUIPA that is sufficient to survive a motion to dismiss.

## CONCLUSION

For the foregoing reasons, the plaintiffs, Linda M. Clough and Garnet Drakiotes, respectfully requests that this Honorable Court deny the defendant, Allstate Insurance Company's, Motion to Dismiss.

**PLAINTIFFS,**
**LINDA M. CLOUGH and**
**GARNET DRAKIOTES**


By: */s/ Jeffrey R. Lindequist, Esq.*
      Jeffrey R. Lindequist, Esq.
      One Monarch Place, Suite 2220
      Springfield, MA 01144
      (413) 736-4101 – *Telephone*
      (413) 736-4582 – *Facsimile*
      mparker@mdparkerlaw.com
      Federal Bar #ct29425

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on **May 17, 2017**, a copy of foregoing **Plaintiffs' Memorandum of Law in Opposition to the Defendant, Allstate Insurance Company's, Motion to Dismiss** was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

*/s/ Jeffrey R. Lindequist, Esq.*