UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| LINDA M. CLOUGH and<br>GARNET DRAKIOTES<br><br>Plaintiffs,<br><br>v.<br><br>ALLSTATE INSURANCE COMPANY and<br>LIBERTY INSURANCE CORPORATION<br><br>Defendants. | Case No. 3:17-cv-00140-JBA<br><br><br><br><br><br>JULY 12, 2017 |

**DEFENDANT ALLSTATE INSURANCE COMPANY'S REPLY MEMORANDUM IN FURTHER SUPPORT OF MOTION TO DISMISS
COUNTS I AND II OF PLAINTIFFS' FIRST AMENDED COMPLAINT**

I. **Plaintiffs have not alleged that a covered collapse has occurred, and Count I of the Amended Complaint should be dismissed.**

Plaintiffs have failed to state a claim in Count I under the Allstate Policy's limited collapse coverage, which requires a "sudden and accidental" "entire" collapse of the structure or a portion thereof that is not "settling, cracking, shrinking, bulging, or expansion." (ECF Doc. 31-3 at 44). Plaintiffs, in their opposition to Allstate's motion to dismiss, say the term "sudden" is ambiguous because the enumerated perils referenced in the Allstate Policy's limited collapse coverage "contemplate damage occurring over a period of time." (ECF Doc. 32 at 7-8). But this argument has been soundly rejected in recent decisions involving defective concrete claims in this district: *Metsack et al v. Liberty Mutual Fire Insurance Company*, No. 3:14-cv-01150 (VAB), 2017 WL 706599 (Feb. 21, 2017)[1] and *Alexander v. General Ins. Co. of America*, No. 3:16-cv-0059 (SRU) (D. Conn. July 7, 2016),[2] as well as a recent state court defective concrete

---

[1] Copies of unreported decisions are attached to this brief as Exhibit A.
[2] A copy of the transcript of Judge Underhill's oral ruling on the motion to dismiss is attached to Allstate's Memorandum in Support of the Motion to Dismiss at Exhibit A. (ECF Doc. 31-1).

case, *Jemiola v. Hartford Casualty Ins. Co.*, CV-15-6008837-S (J. D. Tolland 3/2/2017).[3] Like the plaintiffs in those cases, Plaintiffs here attempt to inject ambiguity into the term "sudden" by conflating a deteriorative process that *may eventually* lead to a collapse with a collapse itself. Judge Underhill rejected this argument in *Alexander*, holding that although hidden decay may occur gradually, it does not cause an abrupt, or sudden, collapse until a structural component of the building actually falls. (ECF Doc. 31-1 at 14-15).

Plaintiffs concede, as they must, that the District Court in *Metsack* rejected their attempt to create ambiguity in the term "sudden." (ECF Doc. 32 at 11). In *Metsack*, the court considered the *identical* Allstate policy language at issue in this case, under nearly identical factual circumstances, and concluded that the Allstate policy's requirement of "entire collapse" caused by "sudden and accidental direct physical loss" precluded coverage where it was undisputed that the plaintiff's foundation walls "deteriorated over time," and the loss was not "sudden." *Metsack*, 2017 WL 706599 at *8.

Plaintiffs concede that their foundation walls "are afflicted by the same deterioration condition as the Metsacks" and that the condition is "progressive." (ECF Doc. 32 at 11). Yet in an apparent attempt to plead around *Metsack*, Plaintiffs' First Amended Complaint alleges that sudden events (*not* sudden "collapses") "may" occur throughout the long-term process of deterioration. (ECF Doc. 29, ¶¶ 16-17). The futility of Plaintiffs' claims of "suddenness" are highlighted in Plaintiffs' opposition brief, in which they argue that the Complaint's allegations "*suggest* a structural condition that is the result of a series of sudden events, ultimately driven by a long term chemical reaction, but sufficiently sudden for purposes of the language contained in the Allstate policies." (ECF Doc. 32 at 12) (emphasis added). Such vague references

---

[3] A copy of the *Jemiola* decision is attached to Allstate's Memorandum in Support of the Motion to Dismiss at Exhibit E. (ECF Doc. 31-5).

notwithstanding, the Allstate Policy requires a "sudden and accidental" "entire collapse" – which Plaintiffs do not allege anywhere in their Complaint.

Like the plaintiffs in *Metsack*, Plaintiffs here argue, citing *Beach v. Middlesex Mut. Assur. Co.*, 205 Conn. 246 (1987), that "the Connecticut Supreme Court has explicitly rejected the notion that a 'collapse' must involve a sudden or catastrophic event." (ECF Doc. 32 at 7). But the policy in *Beach* did not use the words "entire collapse," "sudden and accidental," or anything equivalent to those phrases in its collapse coverage, as the Allstate policy does. Allstate is not, as Plaintiffs suggest, "attempt[ing] to impose the characteristic of suddenness" to the collapse coverage. Rather, it seeks to enforce the terms of a written contract that explicitly requires a "sudden" loss for coverage to apply.[4]

. Plaintiffs rely on *Bacewicz v. NGM Ins. Co.*, No. 3:08-1530 (JCH), 2010 WL 3023882 (D. Conn. Aug. 2, 2010) for their argument that this court should apply *Beach* without any consideration of the "sudden" requirement in the Allstate Policy, arguing that what it calls the "slight difference" between the Allstate and *Beach* policies warrants the same result as *Bacewicz*. (ECF Doc. 32 at 14). But in *Metsack* the court distinguished *Bacewicz,* because like *Beach,* the policy there did not included the word "sudden" in its description of the collapse coverage. 2017 WL 706599, at *7. The *Metsack* court found this difference dispositive in ruling for Allstate:

> [t]he 'collapse' provision of the Allstate Policy requires that a covered collapse be a 'sudden and accidental direct physical loss.' While *Beach* and the numerous JJ Mottes concrete cases that have been heard in this district have held that a collapse need not be 'sudden' to be covered, ***none of the policies evaluated included the word 'sudden' within their 'collapse' provisions.***

*Id.*, 2017 WL 706599, at *7 (emphasis added).

---

[4] Although for the reasons stated here and in Allstate's main brief *Beach* does not apply to this case, it is significant that in *Beach* "the structure in question was in imminent danger of falling over. . . ." 205 Conn. at 249. No such imminent catastrophe is alleged here, where Plaintiffs only allege that the frost walls of their home "will fall in" at some indefinite point in the future. (ECF Doc. 29, Compl., ¶14).

3

Plaintiffs next attempt to portray the Allstate Policy's collapse coverage as internally inconsistent because some of the specified perils that can cause collapse – for example, "hidden decay" – can occur "gradually over a period of time." (ECF Doc. 32 at 8). As noted above, the courts in *Alexander, Metsack* and *Jemiola* all rejected this argument.[5] As Judge Underhill held in *Alexander*, although hidden decay may occur gradually, it does not cause an abrupt, or sudden, collapse until a structural component of the building falls.[6]

Plaintiffs attempt to distinguish *Buell Indus. Inc. v. Greater New York Mut. Ins. Co.*, 259 Conn. 527, 540 (2002), which held that "sudden" means "temporally abrupt," on the grounds that it dealt with an exception to a pollution exclusion, and pollution can occur due to a sudden or gradual release of pollutants, while "there is no 'sudden' type of decay." (ECF Doc. 32 at 10). As the court made clear in *Alexander*, however, it is not unusual for hidden long-term decay to result in a "sudden" collapse – for example, a beam that finally snaps after being eaten away by termites for years.[7] Plaintiffs cannot escape the holding of *Buell*, articulated at length and in broad terms, that "sudden" means "temporally abrupt."

---

[5] Plaintiffs also cite a Florida case, *Kelly v. Balboa Ins. Co.*, 897 F. Supp. 2d 1262 (M.D.. Fla. 2012) in support of their argument. *Kelly*, which has never been cited in another decision for the proposition upon which Plaintiffs rely, involved the question of whether a "collapse" potentially occurred during the applicable policy period. The court denied the insurer's motion for summary judgment because it found a factual dispute on that issue. The court also stated, without analysis, that the term "sudden" in the policy's collapse provision was ambiguous as applied to hidden decay and hidden insect or vermin damage. The court in *Metsack* expressly rejected the holding in *Kelly*. 2017 WL 706599, at *7.

[6] Plaintiffs' reliance on *Dalton v. Harleysville Worcester Mut. Ins. Co.*, 557 F.3d 88 (2d Cir. 2009) is similarly unavailing. The *Metsack* court expressly rejected the plaintiffs' reliance on Dalton, noting that "the policy language at issue in *Dalton* did not qualify 'collapse' with 'sudden.'" 2017 WL 706599, at *7. The *Dalton* court, interpreting New York law, held that where a policy *did not* specify an "entire" or "sudden" requirement or otherwise define "collapse," a collapse caused by hidden decay or insect damage did not require a "sudden destructive force." *Id.* at 93. The Second Circuit further noted that a case involving a policy that *was* construed to a require a "sudden impact" *would be distinguishable. Id.* at 92, n.1. Thus, *Dalton* is inapplicable here, as the Policy requires an "entire collapse" that is "sudden."

[7] Plaintiffs attempt to distinguish *Alexander* by claiming that the "policies at issue in *Alexander* contain a materially different collapse provision from that found in the Allstate's policies at issue in this matter." (ECF Doc. 32 at 13). The fundamental similarities between the policy at issue in *Alexander* and the Allstate Policy belie this purported distinction. Like the policy in *Alexander*, which defined collapse, in part, as an "abrupt falling down or caving in" (emphasis added), the Allstate Policy provides coverage for an "entire collapse" that is "sudden and accidental" (emphasis added). (ECF 31-1, at 23; ECF 31-3, at 44). Also like the policy in *Alexander*, the Allstate Policy's

Plaintiffs appear to conclude, based solely on the claim that their foundation walls have slowly deteriorated over time, that "sudden" events such a bulge or cracking *may* occur throughout this process. (*See* ECF Doc. 29, Compl., ¶¶ 16-17). This is nothing more than mere speculation—a "naked assertion" devoid of "further factual enhancement"—and thus cannot serve as a plausible allegation that a "sudden" collapse has occurred. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Moreover, the purportedly "sudden" events that Plaintiffs allege *may* occur—bulging and cracking—are explicitly excluded under the Policy's limited coverage for collapse, which states that "[c]ollapse does not include settling, cracking, shrinking, bulging or expansion." (ECF Doc. 31-3 at 44). Accordingly, Plaintiffs have failed to allege a plausible breach of contract claim, and Count I should be dismissed.

## II. Because Count I Should be Dismissed, Count II (Violation of CUTPA and CUIPA) Should Be Dismissed As Well.

Plaintiffs do not dispute that if there is no coverage under the Policy, there can be no liability for a CUTPA/CUIPA violation. Therefore, for the reasons stated in Allstate's Memorandum of Law, if the Court grants Allstate's motion to dismiss Count I, it should also dismiss Count II. (ECF Doc. 31 at 17-18).

The only provision of CUIPA that Plaintiffs invoke in their Amended Complaint and opposition brief is Conn. Gen. Stat. § 38a-816(6)(f), which proscribes "not attempting in good faith to effectuate prompt, fair and equitable settlements of *claims in which liability has become reasonably clear.*" (*See* ECF Doc. 29, Comp., ¶ 38) (emphasis added). An insurer with a good faith basis for denying coverage cannot be in violation of § 38a-816(6)(f), in which the requirement that "liability has become reasonably clear" "means that the existence of liability has to be *substantially certain.*" *Tucker v. Am. Int'l Group, Inc.*, 2015 WL 403195, at fn.48 (D.

---

collapse provision expressly excludes coverage for "settling, cracking, shrinking, bulging, or expansion." (ECF Doc. 31-3 at 44).

5

Conn. Jan. 28, 2015) (*quoting* 2 Insurance Claims and Disputes § 9:35 (6th ed. updated March 2014) (emphasis added).

Plaintiffs provide a string citation to District Court cases that have denied insurer motions directed to CUTPA/CUIPA claims. (ECF Doc. 32 at 16). None of these cases, however, have considered the import of the requirement that liability be "substantially certain" or "reasonably clear" in order to state a claim under Conn. Gen. Stat § 38a-816(6)(f). Two of the cases Plaintiffs cite, *Kowalshyn v. Peerless Ins. Co.*, 3:16-cv-00148 (JAM) and *Mensher v. Liberty Mutual Fire Ins. Co.*, 3:15-cv-011007 (WWE), are one-paragraph orders with no analysis. Although the court in *Metsack* denied Liberty's motion to dismiss, it described the plaintiffs' ISO-related allegations as "strik[ing] this Court as failing to cross the line between 'possible' and 'plausible.'" *Metsack v. Liberty Mut. Fire Ins. Co.*, No. 3:14-CV-01150 (VLB), 2015 WL 5797016 (D. Conn. Sep. 30, 2015). The factual background of the cases cited also reveal differences. In *Panciera v. Kemper Indep. Ins. Co.*, No. 3:13cv1009 (JBA), 2014 WL 1690387 (D. Conn. Apr. 29, 2014), for example, the plaintiffs had alleged that the defendant insurer "denied coverage of their claim despite the fact that [its] field adjuster determined that the damage to their foundation was caused by a peril covered under the collapse provision of their policy." No such allegation is present in Plaintiffs' Complaint.

Plaintiffs also try in vain to distinguish *Alexander* and *Tucker*. Plaintiffs attempt to distinguish *Tucker* on its facts, but cannot deny that the court in *Tucker* applied the "substantially certain" standard to dismiss a CUTPA/CUIPA claim as a matter of law. Given the state of the law in Connecticut on "collapse" coverage, and the fact that Allstate prevailed on the identical language at issue here in *Metsack*, it is not plausible to conclude that Allstate's liability is "substantially certain." Plaintiffs further argue, through a string of loosely-connected

Massachusetts District Court cases, that because the "substantially certain" standard is determined by considering what a "reasonable person" would conclude with regard to the insurer's liability, the issue is not appropriate for resolution at the pleading stage. Here, however, Allstate's coverage position, vindicated in *Metsack,* is supported by exclusions that apply directly to the type of loss Plaintiffs claim. Allstate's interpretation of the "sudden" requirement for a collapse conforms with the Connecticut Supreme Court's interpretation in *Buell*. Given the state of the law, is not plausible to suggest that Allstate's liability to Plaintiffs was "reasonably clear." Plaintiffs' CUTPA/CUIPA claims fail as a matter of law.

There can be no liability under Conn. Gen Stat. § 38a-816(6)(f) where the insurer's coverage position was, as here, reasonable and fairly debatable.[8] (*See* cases cited in Def's. Memo, ECF 31-1, at p. 18). Moreover, the Court in *Carney v. Allstate Insurance Company*, 3:16-cv-00592 (VLB), rejected certain allegations present in these Plaintiffs' CUTPA claim,[9] in particular the claims based on alleged participation in the Insurance Services Office ("ISO"). (Exh. A, at pp. 7-8; ECF 29, Compl., ¶¶ 26-31). Addressing allegations regarding participation in ISO in the context of the *Carney* plaintiff's bad faith claim, the Court held that the plaintiff had failed to "provide any facts that suggest [Allstate] wrongfully acted upon its knowledge to improperly interpret the homeowner policy at issue." (*Id.* at 8). The court concluded that "mere participation in the ISO without more is insufficient to raise an inference of bad faith." (*Id.*). This Court should reach the same conclusion and dismiss Count II, even if it does not dismiss Count I.

---

[8] Plaintiffs assert that motions to dismiss similar ISO allegations have been denied in other cases, including *Panciera v. Kemper Independence Ins. Co.*, 3:13-CV-1009, 2014 WL 1690387 (D. Conn. April 29, 2014). (ECF Doc. 32 at 16). The cases cited do not involve consideration, as here, of the insurer's specific reasons for denial of the claim at issue.

[9] While the *Carney* decision involves a bad faith count, it addresses allegations almost identical to those pled in Plaintiffs' CUTPA/CUIPA count. A copy of the decision granting Allstate's motion to dismiss in *Carney v. Allstate Insurance Company*, 3:16-cv-00592-VLB is attached hereto as Exhibit B.

## IV. **Conclusion**

This Court should reject Plaintiffs' attempt to manufacture ambiguity in Allstate's Policy. Plaintiffs do not and cannot allege that their home has suffered a "sudden" collapse. Their claims of "pattern cracking," caused by defective materials used in construction, are excluded from coverage. (ECF Doc. 29, Compl., ¶ 10). Even if they are not, which Allstate denies, a good-faith coverage dispute, as exists here, cannot form the basis for CUTPA/CUIPA liability.

For the foregoing reasons, Plaintiffs have failed to state claims upon which relief can be granted, and Counts I and II should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6).

/s/ *Raymond T. DeMeo*
Raymond T. DeMeo (ct02189)
Jenna L. Veronneau (ct30076)
ROBINSON & COLE LLP
280 Trumbull Street
Hartford, CT 06103
Phone: (860) 275-8200
Fax: (860) 275-8299
rdemeo@rc.com
jveronneau@rc.com
Attorney for Allstate Insurance Company

## CERTIFICATION

I hereby certify that on July 12, 2017, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent via e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing though the Court's CM/ECF System.

*/s/ Raymond T. DeMeo*
Raymond T. DeMeo