UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| LINDA CLOUGH and GARNET DRAKIOTES,<br>    *Plaintiffs,*<br>v.<br>ALLSTATE INSURANCE COMPANY and LIBERTY INSURANCE COMPANY,<br>    *Defendants.* | Civil No. 3:17-CV-140 (JBA)<br><br>August 29, 2017 |

**RULING ON DEFENDANT ALLSTATE'S MOTION TO DISMISS [#30]**

Plaintiffs Linda Clough and Garnet Drakiotes brought this action alleging breach of an insurance contract against Defendant Allstate Insurance Company ("Allstate") (Count 1); violations of the Connecticut Unfair Trade Practices Act ("CUTPA") and the Connecticut Unfair Insurance Practices Act ("CUIPA") against Allstate (Count 2); breach of an insurance contract against Defendant Liberty Insurance Company ("Liberty") (Count 3); and violations of the Connecticut Unfair Trade Practices Act ("CUTPA") and the Connecticut Unfair Insurance Practices Act ("CUIPA") against Liberty, all four counts in connection with denial of coverage for Plaintiffs' claim to cover the cost of a crumbling house foundation. Allstate now moves [Doc. # 30] to dismiss Counts 1 and 2. For the reasons set forth below, Allstate's Motion is GRANTED.

### I. Facts Alleged

From 1998 through 2015, Plaintiffs insured their home through a homeowner's insurance policy issued by Allstate and timely made all required premium payments. (Amended Complaint ("Compl.") [Doc. # 29] ¶¶ 6-7.) From 2015 to 2016, Plaintiffs insured their home through a homeowner's insurance policy issued by Liberty and timely made all required premium payments. (*Id.* ¶¶ 42-43.)

In July of 2016, Plaintiffs noticed that the frost walls[1] of their home had a series of horizontal and vertical cracks throughout. (*Id.* ¶¶ 8.) Plaintiffs consulted with various professionals and discovered that the cracking was caused by "a chemical compound" that, when mixed with the water, sand and cement necessary to form the concrete, "began to oxidize (rust) and expand, breaking the bonds of the concrete internally and reducing it to rubble." (*Id.* ¶¶ 9-11.) The complaint alleges that "at some point between the date on which the frost walls were poured [in 1998] and July of 2016, the frost walls suffered a substantial impairment to their structural integrity" and that "it is only a matter of time until the frost walls of the plaintiffs' home will fall in. . . ." (*Id.* ¶ 11-12.) At some unknown point in the future, "the entire home will fall to the ground" because of the eventual collapse of the frost walls. (*Id.* ¶ 13.) Plaintiffs therefore allege that "while the process of decay occurs over the course of years, ultimately resulting in substantial impairment and complete degradation, it may cause sudden events throughout the course of decay" and, as the "strength of the frost wall weakens, external forces may cause a series of sudden events where the frost walls bulge and shift in some increment or pieces of concrete become dislodged and fall to the floor." (*Id.* ¶¶ 16-17.) Finally, the Complaint alleges that "there is no known scientific or engineering method or process which is effective in reversing the deterioration, it continues to advance with or without the presence of visible water." (*Id.* ¶ 12.)

On August 8, 2016, Plaintiffs notified Allstate and Liberty of this substantial impairment and made a claim for coverage under their homeowner's insurance policy because of the "damages

---

[1] By Defendant's definition, "frost walls" are a kind of foundation: "'Frost walls' . . . mean foundation walls with footings at or below the frost line, backfilled inside and out and with no basement." (Mem. Supp. Mot. to Dismiss [Doc. # 31] at 1 n.2.)

2

caused by the chemical reaction." (*Id.* ¶¶ 15, 51.) Both Allstate and Liberty denied the claim. (*Id.* ¶¶ 16, 52.)

The Allstate insurance policy at issue is a Deluxe Homeowners Policy issued by Allstate. (*See* Ex. C ("Policy") to Mem. Supp. Mot. to Dismiss [Doc. # 31-3].) The Policy provides the following general coverage:

> We will cover sudden and accidental direct physical loss to property described in Coverage A—Dwelling Protection and Coverage B—Other Structures Protection except as limited or excluded in this policy.

(Policy at 31.)[2]

The Policy then lists a series of exclusions, several of which are relevant to the instant dispute. The Policy does not cover losses "consisting of or caused by . . . Collapse, except as specifically provided in Section I." (*Id.* at 32.) Further, the policy does not cover losses "consisting of or caused by . . . deterioration, inherent vice, or latent defect," "rust or other corrosion, . . ." or "settling, cracking, shrinking, bulging or expansion of . . . foundations [or] walls . . . ." (*Id.*)

Although the policy generally excludes collapse, it specifies a set of conditions under which collapse would be covered in the "Additional Protection" section:

**Collapse:**
We will cover
        a) the entire collapse of a covered building structure
        b) the entire collapse of part of a covered building structure; and
        c) direct physical loss to covered property caused by (a) or (b) above.

---

[2] There are two sets of page numbers on Exhibit C: the pre-printed page numbers included in the policy, and the page numbers automatically generated by the Court's CM/ECF filing system at the top of the page. Because the pre-printed page numbers start over multiple times and leave some pages blank, they are not useful for finding specific citations. Therefore, the Court will use the page number generated by CM/ECF and listed at the top of the page.

> For coverage to apply, the collapse of a building structure in (a) or (b) above must be a sudden and accidental physical loss caused by one or more of the following:
>
> . . .
>
> > b) hidden decay of the building structure;
> >
> > . . .
> >
> > f) defective methods or materials used in construction, repair, remodeling or renovation.
>
> Collapse does not include settling, cracking, shrinking, bulging or expansion.

(*Id.* at 46.) The Policy's definitions section does not define "sudden," "direct physical loss," or "collapse," although the Additional Protection requires that collapse be "entire" to trigger coverage.

## II. Discussion

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Although detailed allegations are not required, a claim will be found facially plausible only if "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Conclusory allegations are not sufficient. *Id.* at 678–79; *see also* Fed. R. Civ. P. 12(b)(6).

"[A] complaint 'is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference.'" *Holloway v. King*, 161 F. App'x 122, 124 (2d Cir. 2005) (quoting *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002)). "Even where a document is not incorporated by reference, the court may nevertheless consider it where the complaint 'relies heavily upon its terms and effect,' which renders the document 'integral' to the complaint." *Id.* (quoting *Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.*, 62 F.3d 69, 72 (2d Cir.1995) (per curiam)

4

### A. Count One: Breach of Contract

In Connecticut, "the terms of an insurance policy are to be construed according to the general rules of contract construction. The determinative question is the intent of the parties, that is, what coverage the insured expected to receive and what the insurer was to provide, as disclosed by the provisions of the policy." *Liberty Mut. Ins. Co. v. Lone Star Indus., Inc.*, 290 Conn. 767, 795–96 (2009) (internal citations and alterations omitted). Where the language of an insurance policy is clear, the words are to be ascribed their ordinary meaning. However, when an insurance contract is ambiguous, "that [interpretation] which will sustain the claim and cover the loss must, in preference, be adopted. This rule of construction favorable to the insured extends to exclusion clauses." *Id.*

Plaintiffs allege breach of contract on the ground that they paid the premium for their Policy but were denied coverage for a claim that fell within its terms.[3] Defendant moves [Doc. # 30] to dismiss this claim, arguing that there was no coverage because (i) the Policy only covers "sudden and accidental" losses, whereas Plaintiffs allege a progressive process of deterioration that began when the foundation was poured in 1998, (ii) the Policy explicitly excludes cracking walls and losses caused by faulty materials or by "rust or other corrosion," and these are the three causes Plaintiffs claim for their loss, and (iii) the limited coverage for collapse applies only to an "entire collapse" that is "sudden and accidental" and does not include "settling, cracking, shrinking, bulging, or expansion." (Mem. Supp. Mot. to Dismiss [Doc. # 31-1] at 7.)

---

[3] To state a claim for breach of contract in Connecticut, a plaintiff must allege: "(1) the formation of an agreement; (2) performance by one party; (3) breach of the agreement by the opposing party; (4) direct and proximate cause; and (5) damages." *McMann Real Equities Series XXII, LLC v. David McDermott Chevrolet, Inc.*, 93 Conn. App. 486, 503–04 (2006). The Complaint sufficiently alleges formation of an agreement and that Plaintiffs paid their premium.

5

### 1. Coverage for Sudden and Accidental Losses

Defendant first argues that the Policy only covers "sudden and accidental direct physical loss," (Policy at 37) but that the loss described by Plaintiff was a "progressive deterioration of . . . concrete" that has occurred "over time." (Compl. ¶¶ 5, 7, 12.) In *Buell Industries, Inc. v. Greater New York Mut. Ins. Co.*, 259 Conn. 527, the Connecticut Supreme Court rejected a plaintiff's contention that the word "sudden" in a "sudden and accidental" exception meant only "unexpected" without any temporal connotation and consequently rejected the plaintiff's argument that an insurance policy should cover an unexpected loss that occurred over a period of years. The Connecticut Supreme Court concluded that "the term 'sudden,' as used in the policies, includes a temporal quality, which requires that the onset of the release in question occurs quickly or happens abruptly." *Buell Indus., Inc. v. Greater New York Mut. Ins. Co.*, 259 Conn. 527, 536 (2002).

Plaintiffs' Complaint describes a process that began when the house's foundation was initially poured, continues today, and may lead to a sudden and accidental loss in the future, i.e., a progressive deterioration that may in the future be punctuated with sudden breaks or collapses. Without any allegation of suddenness, and with allegations that explicitly contradict the possibility that any sudden loss has already occurred, Plaintiffs' claim is not plausibly covered by the plain language of the policy unless it falls under the limited exception for certain kinds of collapses.

### 2. Policy Exclusions for Cracking, Settling, and Losses Caused by Rust

Defendant further argues that Plaintiffs' claimed loss is excluded because it consists of cracking and crumbling of the house's foundation and the Policy explicitly excludes coverage for losses "consisting of" or "caused by" "settling, cracking, shrinking, bulging or expansion of . . . foundations, walls, floors, roofs or ceilings" and because Plaintiffs describe the cracking as

6

beginning when the concrete "began to oxidize (rust) and expand," (Compl. ¶ 10), but the Policy explicitly excludes losses caused by "rust." (Policy at 38.) Plaintiffs do not respond to this argument in their opposition, arguing instead that their loss is covered under the Additional Coverage for Collapse exception.

  3. **Additional Coverage for Collapse**

Defendant next argues that the additional collapse coverage does not apply because that coverage is only triggered by a collapse that is "sudden and accidental" (Policy at 46) and because however the term 'collapse' is defined, the Policy specifically excludes "cracking, shrinking, bulging or expansion" from its definition. (Mem. Supp. Mot. to Dismiss at 10.) Here, the Complaint alleges that the chemical reaction that causes the concrete to expand and crack began in 1998 when the concrete was first mixed and that at some point between the date the frost walls were poured and July 2016, the frost walls "suffered a substantial impairment." (Compl. ¶¶ 11, 13.) There is no allegation that a sudden collapse has already occurred.

Interpreting identical policy language and a similar set of factual allegations, Judge Vanessa L. Bryant recently granted summary judgment to Allstate, reasoning that

> [b]ecause the parties do not dispute that [plaintiffs'] basement walls deteriorated over time, rather than 'suddenly,' and that the effects of the condition which has compromised the structure was observable to the homeowners many years before the basement walls were opined to be substantially impaired, the Allstate Policy excludes coverage for their loss irrespective of the definition of the term collapse.

*Metsack v. Liberty Mut. Fire Ins. Co. et al.*, No. 14-cv-1150, 2017 WL 706599 (D. Conn. Feb. 31, 2017).

Plaintiffs seek to avoid the holding in *Metsack* by raising two arguments. First, they allege that a collapse will eventually occur and that it "may" occur suddenly (Compl. ¶¶ 14, 16-17.) This

7

attempt to plead around the holding in *Metsack*, however, undermines Plaintiffs' claim, as it underscores the fact that any sudden and accidental loss has not yet occurred. Plaintiffs' first argument therefore fails.

Second, Plaintiffs claim that the word "sudden" is ambiguous because the Connecticut Supreme Court has "explicitly rejected the notion that a collapse must involve a sudden or catastrophic event." (Opp'n at 7 (citing *Beach v. Middlesex Mut. Ass. Co.*, 205 Conn. 246, 252 (1987)). This argument misconstrues the import of *Beach*, which holds that the term 'collapse,' if not otherwise defined in a policy, has a broad meaning, that it need not be "of a sudden and catastrophic nature" and that it includes any "substantial impairment of the structural integrity of a building" that "subsequently develops out of a loss that appeared, at its inception, to fall within the rubric of 'settling, cracking, shrinkage, bulging, or expansion.'" *Id.*

Insurers have avoided this expansive scope of 'collapse' by utilizing a more specific definition in their policies, an option the *Beach* court explicitly left open. Allstate has chosen to limit coverage by requiring that collapse be 'sudden and accidental,' and in doing so has effectively foreclosed Plaintiffs' claim at this time.[4]

Despite Plaintiffs' argument, the term "sudden" is not ambiguous and the reasoning in *Beach* does not render it unclear. Under the terms of the Policy, a process of hidden decay does

---

[4] Allstate's approach does not give recognition to the reasoning in *Beach*, which relied on the doctrine of avoiding economic waste to justify an expansive definition of collapse. In addition, *Beach* leaves open how or whether an insurer may raise the common law duty to mitigate damages as a defense when it reasoned that "requiring the insured to await an actual collapse would not only be economically wasteful; but would also conflict with the insured's contractual and common law duty to mitigate damages." *Id.* at 252 n.2. If Allstate were to raise such a defense after the eventual and inevitable collapse of the Clough's house, it may render the Policy's promise to provide coverage for sudden collapse illusory.

8

not trigger coverage until a sudden collapse occurs. The Complaint has not alleged such a collapse. However, there appear to be no means of stopping the chemical reaction that causes the foundation to deteriorate and, as alleged, some portion of the house may eventually collapse, at which time Plaintiffs may seek coverage.

### III. Violation of CUTPA/CUIPA

Count Two of the Complaint alleges violations of CUTPA and CUIPA in connection with Allstate's collusion with other insurers to unfairly deny coverage to Plaintiff. Defendant argues that this Count should be dismissed because, under Connecticut Supreme Court precedent, where an insurer's interpretation of a policy's coverage limitation is correct, "there can be no genuine issue of material fact as to whether the application of that interpretation as a general business practice constituted oppressive, unethical or unscrupulous conduct in violation" of CUTPA/CUIPA. *Zulick v. Patrons Mut. Ins. Co.*, 287 Conn. 367, 378 (2008).

Plaintiffs does not respond directly to this argument, claiming only that they have sufficiently alleged breach of contract and that, proceeding on that assumption, the bad faith and statutory CUTPA/CUIPA claims are also adequately pleaded. However, under *Zulick*, having concluded that Count One must be dismissed, Count Two must be dismissed as well.

### IV. Conclusion

For the foregoing reasons, Allstate's Motion to Dismiss is granted.

IT IS SO ORDERED.

/s/
Janet Bond Arterton, U.S.D.J.

Dated at New Haven, Connecticut this 24th day of August 2017.